# Wytheville.

AMERICAN SURETY CO., OF NEW YORK, v. COMMONWEALTH.

JUNE 16, 1904.

1. TAXATION—*Corporations*—*Charter Fees.*—Under the present Constitution of this State, and the laws made in pursuance thereof, all corporations, without exception, are placed upon terms of equality, and are required to pay a charter fee (as distinguished from an annual license fee), as a condition precedent to doing business in this State, with a proviso that this charter fee shall not be exacted of those corporations by which this fee has been at any time paid. The fact that no charter fee has been heretofore required of surety companies, or that they have paid an annual license fee, does not exempt them from the payment of the charter fee required by sections 37 to 40, inclusive, of Acts 1902-'3-'4, pp. 178-180; and there is nothing in the way of a contract with, or an estoppel upon the State, to interfere with its unquestioned power to impose the tax.

Appeal from the State Corporation Commission.

*Affirmed.*

The opinion states the case.

*Wyndham R. Meredith,* for the appellant.

*Attorney-General William A. Anderson,* for the Commonwealth.

KEITH, P., delivered the opinion of the court.

This is an appeal from a decision of the State Corporation Commission, imposing a fine upon appellant for transacting bus-

iness in the State of Virginia without having obtained a license, in accordance with section 1104 of the Code, as amended by an Act of Assembly, approved May 15, 1903 (Acts 1902-'3-'4, p. 360). That section provides that "every incorporated company doing business in this State shall have an office in the State, at which all claims against such company due residents of the State may be audited, settled, and paid. Every such company incorporated under a jurisdiction beyond the limits of this State (and hereinafter designated as a foreign corporation) shall, before doing business in this State, present to the State Corporation Commission: (a) A written power of attorney, executed in duplicate, appointing some person residing in this State its agent, upon whom all legal process against the corporation may be served, and who shall be authorized to enter an appearance in its behalf; (b) Two duly authenticated copies of the charter of the corporation, and (c) A certificate of the auditor of public accounts, showing the payment into the treasury of the fee required by law to be paid by such corporation; and shall obtain from said Corporation Commission a license to transact business in the State. If it shall be made to appear to the State Corporation Commission that said corporation has complied with the law relative to the licensing of a foreign corporation of the character of the applicant corporation, then said Corporation Commission shall issue to said corporation a license to transact business in the State." There are other provisions of this section which need not be at present adverted to.

This law is broad and comprehensive in its terms. It applies to every incorporated company doing business in the State, and, upon its face, embraces foreign as well as domestic corporations.

The appellant having been served with notice by the State Corporation Commission to appear and show cause why a fine should not be imposed upon it for doing business without having complied with the section just quoted, appeared and answered,

resting its defence upon two grounds—First, that sections 1104 and 1105, as amended, were not intended to apply to it, but that it was governed by a special law, found as originally passed in the Acts of 1893-'4, pp. 758-765, and amended at the session of 1895-'6 (Acts 1895-'6, pp. 284-423); and, second, that it had tendered to the auditor the specific license tax of $200.00, imposed upon it for the year 1904, and that section 1104 has reference to this license fee, and not to the charter fee required in sections 37-40 inclusive, found at pp. 178-180, Acts of Assembly 1902-'3-'4; and, further, that, even though a charter fee was by law required of it, it comes within the exception found in section 40, *supra,* which provides that "nothing contained in this section, or the three preceding sections, shall be construed to impose a fee for a charter, or for authority to transact business in this State, upon any company which has already paid the fee or tax heretofore imposed by law upon its charter, or for authority to transact its business in this State."

Dealing with the last defence first, it seems clear that the fee required by section 1104 is what is known as a charter fee. This appears from the concluding portion of that section.  "Any foreign corporation which has heretofore paid the fee required by law to entitle it to transact business in this State, and has otherwise complied with the laws heretofore existing relative thereto, shall not, on application for license to transact business in this State, be required to pay such fee again, nor to file a copy of the charter with the Secretary of the Commonwealth, if a copy thereof is already on file in his office."   It seems too plain for argument that this has reference to a charge, which is paid once for all, and not to the license tax, which is paid each and every year. · Nor does the appellant, in any event, come within the exception, for it nowhere appears that it has at any time paid this charter fee.  Its statement upon this subject is cautiously made.  Referring to section 1104, as amended, appellant says in its petition to the Corporation Commission for

license to do business in the State for the year 1904, that "it only required those foreign corporations, which have always been governed by section 1104, to pay the charter fee, where such corporations are attempting to do business without ever complying with that section, or with the law relating to charter fees. All such foreign corporations are, by the Act of May 15, 1903, required to now pay this charter fee. The act leaves untouched that class of foreign corporations which were not governed by section 1104, as is the case with surety companies, and your petitioner in particular. In other words, if a right to transact business in this State has once been granted on the payment of a charter fee, and an annual license tax, *or on the payment of a license tax only,* the State cannot, or, at least, does not, intend to now attach the requirement of the payment of a charter fee to the foreign corporation which has already obtained and been granted the right to do business in this State." This is certainly not an averment that it had paid the charter fee. Its whole insistence, indeed, is that it was never liable for the charter fee, but that it had been permitted to do business without the payment of such fee, and was therefore entitled to continue its business upon the same terms. There is neither allegation nor proof of the payment of the charter fee, and, therefore, appellant is not within the terms of the exception to the operation of sections 37-40.

The case of appellant must stand or fall by its first contention. Is it controlled by the law applicable to corporations in general, whether foreign or domestic, or is there a special law which applies to that particular class of corporations to which appellant belongs?

The Constitution of Virginia, section 156a, article XII, provides that, "subject to the provisions of this Constitution and to such requirements, rules and regulations, as may be prescribed by law, the State Corporation Commission shall be the department of government, through which shall be issued all charters

and amendments or extensions thereof for domestic corpora-
tions, and all licenses to do business in this State to foreign cor-
porations; and through which shall be carried out all the pro-
visions of this Constitution, and of the laws made in pursuance
thereof, for the creation, visitation, supervision, regulation and
control of corporations chartered by, or doing business in, this
State." By section 1104, as found in the Acts of 1902-'3-'4,
at page 360, and which has already been quoted, every incorpor-
ated company doing business in this State is required to pay
a charter fee. The amount of that charter fee is fixed by sec-
tions 37-40, already referred to, and the penalty for doing busi-
ness without complying with the law is imposed by section 1105.

Whatever may have been the interpretation of the law, as it
existed before the adoption of the Constitution now in force, and
the passage of the laws in pursuance thereof, including section
1104, as amended, there seems no room for question that appel-
lant, in common with every incorporated company doing business
in this State, must pay a charter fee, or bring itself within the
operation of the exception. It would serve no useful purpose to
inquire whether, by a true construction of the statutes upon the
subject in force prior to the adoption of the Constitution, the
appellant was liable to pay the tax, and escaped by the oversight
or inadvertence of those charged with the execution of the laws,
or whether the Legislature has seen fit to place such companies
upon a more favorable footing than all other corporations doing
business in the State, for, whether this company has hitherto
escaped by inadvertence or in accordance with the intent of the
Legislature, there is nothing in the nature of a contract, nothing
in the nature of an estoppel upon the State to interfere with
its unquestioned power of taxation. Therefore, whatever opin-
ion might be entertained with reference to the laws as they here-
tofore existed, the Constitution and laws, as they now stand, un-
mistakably place all corporations upon a footing of equality,
and all are required to pay a charter fee as the condition prece-

dent to doing business in this State, with a proviso that this charter fee shall not be exacted of those corporations by which this fee has been at any time paid. The Corporation Commission, which is the department specially charged with the duty of granting licenses to do business in this State to foreign corporations, has given this matter careful consideration; has found that the laws do not discriminate in favor of appellant; that it is not within any exception; that it was doing business in violation of the law; and has imposed upon it the minimum penalty for its offence. We discover no error in its ruling, and it is, therefore, affirmed.

*Affirmed.*